05705/71119-MRP

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TIMOTHY ROBERSON,

    Plaintiff,

v.

TENNESSEE DEPARTMENT OF
CORRECTIONS;
GAYLE RAY, TDOC COMMISSIONER;
JENNIE JOBE, WARDEN; DEBRA
JOHNSON, DEPUTY WARDEN; TIM
McCONNELL, HEALTH ADMINISTRATOR;
PAUL ALEXANDER, M.D.

    Defendants.

Civil Action No. 3:11-cv-00117
Judge Sharp/Knowles

## DECLARATION OF PAUL ALEXANDER, M.D.

In accordance with the provisions of 28 U.S.C. 1746, Paul Alexander, M.D., makes the following declarations:

1. I am Paul Alexander and I have personal knowledge of the facts in this declaration.

2. When I treated Mr. Roberson, I was the medical director at Lois DeBerry Special Needs Facility in Nashville, Tennessee.

3. I am licensed to practice medicine in the state of Tennessee.

4. I am familiar with the recognized standard of acceptable professional practice for physicians practicing in Tennessee's prisons.

5. I provided medical care to Mr. Roberson during the time I was at Lois DeBerry Special Needs Facility. The medical care I provided to him met the recognized

1

standard of acceptable professional practice for physicians practicing in Tennessee's prisons.

6. I never refused to provide medical treatment to Mr. Roberson that was medically necessary. I am familiar with Mr. Roberson's medical chart and I know that no member of the medical staff refused to provide him with medically necessary treatment.

7. I did not have the authority to approve Mr. Roberson's hip-replacement surgery. I can only make the request for the surgery.

8. Once surgery requests are approved, I have no involvement in scheduling the surgeries.

9. My role is simply to make the surgical request.

10. On August 25, 2009, I submitted a request for Mr. Roberson to be seen by an orthopedic surgeon.

11. The person charged with scheduling appointments scheduled Dr. Chernowitz to see Mr. Roberson. And Dr. Chernowitz saw Mr. Roberson on September 17, 2009.

12. Dr. Chernowitz recommended that Mr. Roberson see Dr. Limbird in October.

13. Because Mr. Roberson reported doing well with the pain management by taking the prescribed Lodine, Dr. Chernowitz recommended continuing pain management. Another medically sound reason for continuing this type of treatment is that one prefers to avoid a total hip replacement in one as young as Mr. Roberson until it becomes absolutely necessary. Dr. Chernowitz' notes show that he discussed this with Mr. Roberson.

05705/71119-MRP

14. On September 18, 2009, I requested that Mr. Roberson be seen by Dr. Limbird based on Dr. Chernowitz' recommendation. The request was approved and the appointment scheduled. Again, I have no control over or involvement in the scheduling. Dr. Limbird was apparently out of town and Mr. Roberson was again seen by Dr. Chenowitz on October 1, 2009. Dr. Chenowitz recommended that Mr. Roberson be seen by Dr. Limbird to discuss hip replacement at some point in the future.

15. On November 4, 2010, I submitted a request for a total hip replacement. The regional medical director inquired as to whether the better course was to continue to treat with pain management and he requested more information on how the hip problem affected Mr. Roberson's daily life.

16. Apparently he received answers to his questions and the additional information because on December 28, 2010, the regional medical director approved the surgery.

17. Dr. Limbird's note on the hip-replacement surgery requests that the surgery be done in January or "when available."

18. Mr. Roberson's surgery was performed in April 2011.

19. As noted above, my participation ends once I've submitted the request. I have no involvement in approving the surgery or scheduling the surgery. Those areas are beyond my control.

20. I never refused to make a request for Mr. Roberson to see an orthopedic surgeon, nor did I ever refuse to make a request for necessary surgery.

Case 3:11-cv-00117   Document 112-2   Filed 04/06/12   Page 3 of 5 PageID #: 375

21. Mr. Roberson was seen every 90 days in the chronic care clinic and he could be seen at other time by signing up for sick call.

22. I have never refused necessary medical care to an inmate because of cost. My medical decisions are based on what is best for the patient from a medical standpoint.

23. The opinions I have expressed in this declaration are based upon my education, training, and experience. These opinions are expressed to a reasonable degree of medical certainty.

24. I am an African-American male and I have never refused to make a surgical request or to provide medical treatment to any inmate on the basis of race.

I, Paul Alexander, M.D., declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___April 5th___, 2012.

_____
PAUL ALEXANDER, M.D.

_Evelyn Thompson_
NoTARy

5