**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TIMOTHY ROBERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:11-00117** |
| **v.** | ) | **Judge Sharp / Knowles** |
| | ) | |
| **TENNESSEE DEPARTMENT** | ) | |
| **CORRECTION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

Pending before the Court are two Motions for Summary Judgment: one filed by

Defendants Gayle Ray, former TDOC Commissioner; Jennie Jobe, Warden at DeBerry Special

Needs Facility ("DSNF"); Debra Johnson, Deputy Warden at DSNF; and Joel McConnell,

Health Services Administrator at DSNF; and one filed by Defendant Dr. Paul Alexander. Docket

Nos. 94, 112. Along with their Motions, Defendants have filed supporting Memoranda of Law

(Docket Nos. 95, 112-1); Statements of Undisputed Material Facts (Docket Nos. 96, 113); the

Affidavits of Debra Johnson, Gayle Ray, Joel McConnell, Jennie Jobe, and Dennis Davis

(Docket Nos. 97-101); the Declaration of Paul Alexander (Docket No. 112-2); and Excerpts from

Plaintiff's Deposition (Docket No. 102).

Plaintiff has filed one Response to both Motions for Summary Judgment (Docket No.

118), but has not responded to either of Defendants' Statements of Undisputed Material Facts

(Docket Nos. 96, 113). While Plaintiff has not responded to either of Defendants' Statements of

Undisputed Material Facts, Plaintiff has filed his own "Statement of Genuine Issues of Material Facts" (Docket No. 118-1), to which Defendants have responded (Docket Nos. 119, 120).

Plaintiff, a TDOC inmate housed at DSNF, filed this pro se, in forma pauperis action, pursuant to 42 U.S.C. §1983, alleging that Defendants were deliberately indifferent to his serious medical needs of obtaining a hip replacement, in violation of the Eighth Amendment.[1] Docket No. 1. Plaintiff sues Defendants in their individual capacities, seeking compensatory and punitive damages, and costs.[2] *Id.*

In their Motion, Defendants Ray, Jobe, Johnson, and McConnell argue that: (1) Plaintiff is unable to show that Defendants were personally involved in any alleged violation of his constitutional rights; (2) Plaintiff is unable to show that Defendants were deliberately indifferent to his medical needs; and (3) Plaintiff failed to properly exhaust all available administrative remedies as required by the Prison Litigation Reform Act ("PLRA").

In his Motion, Defendant Alexander argues, *inter alia*, that Plaintiff seeks damages from him for an alleged failure to approve surgery requests, but that Plaintiff cannot sustain an Eighth Amendment deliberate indifference claim against him because he lacks the authority to approve

---

[1]Judge Sharp dismissed Plaintiff's Fourteenth Amendment claims against Defendants Ray, Jobe, Johnson, and McConnell in an Order entered February 10, 2012. Docket No. 76. With regard to his Fourteenth Amendment and discrimination claims against Defendant Alexander, Plaintiff filed a Motion for Leave to Amend Complaint withdrawing those claims (Docket No. 49), which was granted by the undersigned (Docket No. 53).

[2]Judge Sharp dismissed Plaintiff's official capacity claims against Defendants Ray, Jobe, Johnson, and McConnell, as well as his claims for declaratory and injunctive relief in an Order entered February 10, 2012. Docket No. 76. Judge Sharp's Order did not apply to Defendant Alexander. *See id.* Plaintiff filed a Motion for Leave to Amend Complaint withdrawing his official capacity claim against Defendant Alexander, and withdrawing his claims for declaratory and injunctive relief (Docket No. 49), which the undersigned granted (Docket No. 53).

surgery requests, and because he never refused to approve a surgery request from another physician.  Docket No. 112.

Plaintiff responds that "he had a serious injury that caused him severe pain and deteriorating health."  Docket No. 118.  Plaintiff argues that Defendant Alexander discontinued the pain medicine Lodine (prescribed to him by another physician) and instead prescribed him Tylenol, which "exposed Plaintiff to further destruction of his already damaged hip."  *Id.*  Plaintiff also contends that, although another physician had recommended a total hip replacement surgery on October 15, 2009, Defendant Alexander waited until November 4, 2010 to request a total hip replacement, and Plaintiff's total hip replacement was delayed for an additional four months, to April 25, 2011.  *Id.*  Plaintiff maintains that the "defendants low cost plan of treatment resulted in continued severe pain and suffering and further deterioration of plaintiff['s] health and safety."  *Id.*

For the reasons discussed below, the undersigned recommends that Defendants' Motions for Summary Judgment be GRANTED.

## II. Facts[3]

Plaintiff filed suit against Defendants because he was denied the hip surgery that he felt he needed.  Docket No. 102, Excerpts from Plaintiff's Dep. ("Plaintiff's Dep."), 15:8-12.  When confined at DSNF, Plaintiff received medical care and treatment for his hip every three months in the chronic care clinic, and he could be seen at other times by signing up for sick call.  *Id.*,

---

[3]Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.  Additionally, as has been noted, Plaintiff has filed a "Statement of Genuine Issues of Material Facts."  Docket No. 118-1.  While the majority of the "facts"contained therein are conclusory or immaterial, the "facts" that are undisputed, material, and in a form required by Fed. R. Civ. P. 56 are included herein.

31:10-21; Docket No. 112-2, Declaration of Dr. Paul Alexander ("Alexander Dec."), ¶ 21. Plaintiff received hip surgery on April 25, 2011. Plaintiff's Dep., 35:17-23.

Plaintiff sued Gayle Ray because she was the TDOC Commissioner, and Plaintiff felt that she had an obligation to "have at least investigated the complaint" and assist Plaintiff. *Id.*, 55:24 - 56:10.

Plaintiff sued Jennie Jobe because she was the Warden at DSNF, and Plaintiff felt that she had an obligation to "look into the problem" and help him. *Id.*, 56:11 - 57:17.

Plaintiff sued Debra Johnson because she was the Deputy Warden at DSNF, and, like with Defendant Jobe, Plaintiff felt that she had an obligation to "look into [his] problem" and help him. *Id.*, 57:18-24.

Plaintiff sued Joel McConnell because he was the Health Administrator at DSNF, and Plaintiff felt that he had an obligation to assist Plaintiff with obtaining the hip replacement surgery. *Id.*, 59:8-12.

Defendants Ray and Jobe were unaware that Plaintiff had any medical problems or issues with his medical treatment. Ray Aff., ¶ 3; Jobe Aff., ¶ 3. Neither Defendant Ray nor Defendant Jobe have any recollection of receiving any correspondence from Plaintiff. Ray Aff., ¶ 4; Jobe Aff., ¶ 4.

If Defendants Ray, Jobe, or Johnson received correspondence from Plaintiff regarding his medical problems, they reasonably responded to Plaintiff's concerns by forwarding his correspondence to Health Administrator, Defendant Joel McConnell. Ray Aff., ¶ 5; Jobe Aff., ¶ 5; Johnson Aff., ¶ 4. And if concerns about Plaintiff's medical care were forwarded to Defendant Joel McConnell's office, he reasonably responded by forwarding such concerns to

Plaintiff's treating physician. McConnell Aff., ¶ 8. All decisions regarding Plaintiff's medical care are made by his treating physician and Corizon Healthcare, a private healthcare company that contracts with the TDOC to provide medical services to inmates. Ray Aff., ¶ 9; McConnell Aff., ¶ 4.

Defendants Ray, Jobe, Johnson, and McConnell had no authority, direction, control, or influence over the medical care and medical treatment provided to Plaintiff at DSNF. Docket No. 97, Affidavit of Debra Johnson ("Johnson Aff."), ¶ 5; Docket No. 98, Affidavit of Gayle Ray ("Ray Aff."), ¶ 5; Docket No. 99, Affidavit of Joel McConnell ("McConnell Aff."), ¶ 5; and Docket No. 100, Affidavit of Jennie Jobe ("Jobe Aff."), ¶ 6. Defendants Ray, Jobe, Johnson, and McConnell had no authority to recommend, approve, or deny surgical procedures for Plaintiff. Johnson Aff., ¶6; Ray Aff., ¶ 7; McConnell Aff., ¶ 6; and Jobe Aff., 7.

Defendants Ray, Jobe, Johnson, and McConnell were not personally involved in any decision regarding Plaintiff's medical care or hip replacement surgery. Johnson Aff., ¶ 7; Ray Aff., ¶ 8; McConnell Aff., ¶ 7; and Johnson Aff., ¶ 7.

Defendant Alexander was the Medical Director at DSNF, and provided care to Plaintiff. Alexander Dec., ¶¶ 2, 5. Defendant Alexander never refused to make a request for Plaintiff to see an orthopedic surgeon, nor did Defendant Alexander ever refuse to make a request for necessary surgery. *Id.*, ¶ 20. Moreover, Defendant Alexander never refused to provide medical treatment to Plaintiff, and the medical care he provided to Plaintiff met the recognized standard of acceptable professional practice for physicians practicing in Tennessee's prisons. *Id.*, ¶¶ 5, 6. Defendant Alexander does not have the authority to approve surgery requests or schedule surgery; he can only make the surgery request. *Id.*, ¶¶ 7, 9, 14, 19. Once surgery requests are

approved, Defendant Alexander has no involvement in scheduling the surgeries. *Id.*, ¶ 8.

On August 14, 2009, Dr. Alexander discontinued Plaintiff's prescribed Lodine. Docket No. 118-2, Ex. 2; Docket No. 119, ¶ 4; Docket No. 120, ¶ 4.

On August 25, 2009, Defendant Alexander submitted a request for Plaintiff to be seen by an orthopedic surgeon. Alexander Dec., ¶ 10. The person charged with scheduling appointments scheduled Plaintiff to see Dr. Chernowitz on September 17, 2009. *Id.*, ¶ 11. On September 17, 2009, Dr. Chernowitz recommended that Plaintiff continue pain management, and that Plaintiff see Dr. Limbird in October. *Id.*, ¶¶ 12, 13. Upon recommendation by Dr. Chernowitz, on September 18, 2009, Defendant Alexander requested that Dr. Limbird see Plaintiff. *Id.*, ¶ 14. The request was approved and the appointment scheduled. *Id.* Dr. Limbird was apparently out of town, and Dr.Chernowitz again saw Plaintiff on October 1, 2009. *Id.* Dr. Chernowitz again recommended that Plaintiff be seen by Dr. Limbird to discuss a hip replacement at some point in the future. *Id.*

An October 22, 2010 x-ray of Plaintiff's hip revealed further destruction of bone in the head of Plaintiff's left femur than had been in the previous film of August 14, 2009. Docket No. 118-2, Ex. 6; Docket No. 119, ¶ 8; Docket No. 120, ¶ 8.

On November 4, 2010, Defendant Alexander submitted a request for a total hip replacement for Plaintiff. Alexander Dec., ¶ 15. The regional medical director inquired as to whether the better course of action was to continue to treat with pain management, and he requested more information on how Plaintiff's hip problem affected his daily life. *Id.* On December 28, 2010, the regional medical director approved the surgery. *Id.*, ¶ 16. Dr. Limbird's note on the hip replacement surgery requests was that the surgery be done in January or "when

available." *Id.*, 17. As noted above, Plaintiff's surgery was performed in April 2011. *Id.*, ¶ 18.

No member of the DSNF medical staff refused to provide Plaintiff with medically necessary treatment. *Id.*, ¶ 6. Defendant Alexander has never refused necessary medical care to an inmate because of cost; rather, all medical decisions are based on what is best for the patient from a medical standpoint. *Id.*, ¶ 22.

Plaintiff filed two grievances at DSNF in 2009; grievance numbers 00212511 and 00212793. Docket No. 101, Affidavit of Dennis Davis ("Davis Aff."), ¶ 3. Plaintiff has not filed any grievances since the two grievances in 2009. *Id.*, ¶ 4.

### III. Analysis

#### A. Local Rules 56.01 (c) and (g)

While Plaintiff did file a Response to the instant Motions for Summary Judgment, he did not respond to either Statement of Undisputed Material Facts, as required by LR 56.01 (c) and (g).

Local Rules 56.01 (c) and (g), state as follows:

> **(c) Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant . . .
>
> . . .
>
> **(g) Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.

LR 56.01(c) and (g).

As has been noted, Plaintiff has failed to respond to either Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the

7

asserted facts are not disputed for the purposes of summary judgment."

Although Plaintiff did not respond to either Statement of Undisputed Material Facts, he did, later, submit a "Statement of Genuine Issues of Material Facts" (Docket No. 118-1), to which Defendants have responded (Docket Nos. 119, 120).

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motions solely on the ground that Plaintiff has failed to respond to their Statements of Undisputed Material Facts. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential

element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C. 42 U.S.C. § 1983

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, , *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

## D.  The Case at Bar

Although Plaintiff sues Defendant Ray as the TDOC Commissioner, Defendant Jobe as the DSNF Warden, Defendant Johnson as the DSNF Deputy Warden, and Defendant McConnell as the DSNF Health Administrator, it is undisputed that Defendants Ray, Jobe, Johnson, and McConnell had no authority, direction, control, or influence over the medical care and medical treatment provided to Plaintiff at DSNF, and that Defendants Ray, Jobe, Johnson, and McConnell had no authority to recommend, approve, or deny surgical procedures for Plaintiff. Moreover, it is undisputed that Defendants Ray, Jobe, Johnson, and McConnell were not personally involved in any decision regarding Plaintiff's medical care or hip replacement surgery. Because Defendants Ray, Jobe, Johnson, and McConnell were not personally involved in any decision regarding Plaintiff's medical care or hip replacement surgery, they cannot be held liable under a deliberate indifference Eighth Amendment claim.

It is further undisputed that all decisions regarding Plaintiff's medical care were made by

his treating physician and Corizon Healthcare, a private healthcare company that contracts with the TDOC to provide medical services to inmates.

With regard to Defendant Alexander, it is undisputed that Defendant Alexander: (1) was the Medical Director at DSNF; (2) provided care to Plaintiff; (3) never refused to make a request for Plaintiff to see an orthopedic surgeon; (4) never refused to make a request for necessary surgery; (5) never refused to provide medical treatment to Plaintiff; (6) never refused necessary medical care to an inmate because of cost; (7) does not have the authority to approve surgery requests or schedule surgery, but can only make the surgery request, and once surgery requests are approved, he has no involvement in scheduling the surgeries; (8) submitted a request for Plaintiff to be seen by an orthopedic surgeon; and (9) submitted a request for a total hip replacement. It is also undisputed that Plaintiff received a total hip replacement on April 25, 2011.

It is further undisputed that no member of the DSNF medical staff refused to provide Plaintiff with medically necessary treatment, and that the medical care Defendant Alexander provided to Plaintiff met the recognized standard of acceptable professional practice for physicians practicing in Tennessee's prisons. Accordingly, Plaintiff likewise cannot sustain his Eighth Amendment deliberate indifference claim against Defendant Alexander.

### IV.  Conclusion

For the forgoing reasons, the undersigned concludes that there are no genuine issues as to material fact and that Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motions for Summary Judgment be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


_____
E. CLIFTON KNOWLES
United States Magistrate Judge